UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**RICHARD D DEMENT** and<br>**MARY L DEMENT**,<br><br>               Debtors. | Case No. **09-61582-13** |

**MEMORANDUM   OF   DECISION**

At Butte in said District this 14th day of January, 2010.

Pending in this Chapter 13 case is confirmation of the Debtors' Plan and the Chapter 13 Trustee's objection thereto contending that the Plan fails to satisfy disposable income requirement of § 1325(b)(1)(B) by continuing payments of a secured debt for a trailer. The hearing on confirmation was held at Missoula on October 8, 2009. Debtors were represented by attorney Edward A. Murphy of Missoula, and Debtor Richard D. Dement ("Richard") testified. The Standing Chapter 13 Trustee Robert G. Drummond appeared. Exhibit ("Ex.") 1 was admitted into evidence. At the conclusion of the hearing the Court granted the parties time to file simultaneous briefs, after which the matter would be deemed submitted and taken under advisement. Briefing concluded on November 5, 2009. The parties' briefs have been filed and reviewed by the Court together with the record and applicable law. The matter is ready for decision. For the reasons set forth below the Trustee's objection is overruled and the Debtors' Plan will be confirmed.

This Court has jurisdiction in this case under 28 U.S.C. § 1334(a). Confirmation of

1

Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

The facts are not in dispute. The Debtors Richard and Mary Dement entered into a consumer personal loan agreement, Ex. 1, with Wells Fargo Bank, N.A. ("Wells Fargo") on May 22, 2007, in the principal amount of $5,075.00 payable in monthly payments of $114.35 for 60 months. As security for the loan the Debtors signed a security agreement granting Wells Fargo a security interest in their 1995 Prowler (the "trailer"). Richard testified that they use the trailer for recreational purposes only[1].

Richard testified that they fell behind in monthly payments and filed the instant case for relief. Debtors filed their Chapter 13 petition on August 11, 2009, with their Schedules, Plan and Form B22C. Schedule D lists Wells Fargo as a creditor with a claim in the amount of $3,554.89 secured by the Prowler trailer[2]. No amounts for priority claims are listed on Schedule E[3], and Schedule F lists unsecured claims in the total amount of $36,667.21. Schedule I lists total combined monthly income from the Debtors' employment and Richard's pension in the amount of $4,705.17. Schedule J lists Debtors' monthly expenses in the total amount of $3,874.08, including the $114.69 payment to Wells Fargo on the trailer loan, leaving the difference and monthly net income in the sum of $831.09.

---

[1] He testified that the trailer is 24 feet long and is self contained.

[2] Wells Fargo filed Proof of Claim No. 11 on December 10, 2009, asserting a claim secured by the Prowler in the amount of $1,209.58 and an unsecured claim in the amount of $1,850. No objection to Claim 11 has been filed.

[3] Richard testified that he is not behind on federal or state income taxes.

Debtors' Plan (Docket No. 2) proposes monthly plan payments in the amount of $400 for 60 months, and lists Wells Fargo's secured claim at paragraph 2(c) as unimpaired. Richard testified that he has the ability to make the plan payments. Paragraph 2(f), the "Liquidation Analysis," states that allowed priority and unsecured claims will receive a distribution of at least $20,700.00. On cross examination by the Trustee Richard testified that he could pay his creditors in full if he paid the $831.09 net income per month shown by Schedule J, but the $400 plan payment does not pay creditors in full.

Form B22C, Docket No. 3, states Debtors' combined monthly income as $5,922.65 at Line 11, lists the applicable commitment period as 5 years at Line 17, and states at Line 23 that they are above-median income so their disposable income is determined under § 1325(b)(3). Part VI of Form B22C is the calculation of deductions from income, which total $5,575.78 on Line 52, including a monthly payment on Line 47c for debt payment to Wells Fargo Bank NA in the sum of $68.81[4] in payment of a claim secured by the Prowler trailer. Part V of Form B22C calculates the difference, and the monthly disposable income under § 1325(b)(2), in the sum of $346.87 at Line 59, which is less than Debtors' proposed Plan payment of $400.00 per month.

The Chapter 13 Trustee filed objections to confirmation on the grounds the Plan is not filed in good faith because of the payments on the Prowler, which is for recreational purposes, and which he described as egregious behavior under this Court's pre-BAPCPA decision *In re Opper*, 20 Mont. B.R. 123, 132 (Bankr. D. Mont. 2002), and because Debtors could pay

---

[4]Murphy explained the discrepancy at the hearing. Debtors' actual payment to Wells Fargo is $114 for 36 months, which worked out to about $68 over the 60 month plan term.

unsecured creditors in full without the trailer payments but have chosen not to[5]. The Trustee urged the Court to reconsider its reasoning *In re Chavez*, Case No. 07-60567-13 (October 11, 2007[6]) and *In re O'Connor*, Case No. 08-60641-13 (September 30, 2008[7]) that overruled good faith objections because the adequacy of plan payments is determined by Form 22C. The Trustee supplemented his objection to contend that the Plan fails to meet the disposable income requirement of § 1325(b)(2) because the trailer expense is neither reasonable nor necessary, citing *In re Smith*, 418 B.R. 359 (9th Cir. BAP 2009).

The Debtors responded that their only error in Form B22C was omitting the Trustee's 10% fee which would have further reduced their disposable income. The Debtors cite *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 874 (9th Cir. 2008), as support for the formula approach and elimination of discretion in determining disposable income for an above-median debtor in this circuit. Debtors argue that *In re Stitt*, 2008 WL 5685381 (Bankr. D. Idaho) does not support the Trustee's good faith objection because those debtors did not act in good faith in

---

[5]By Stipulation (Docket No. 22), paragraph 2, the Trustee withdrew his good faith objection.

[6]Memorandum of Decision, Docket No. 50. At pages 9 and 10 this Court quoted extensively *In re Austin*, 372 B.R. 668, 682-83 (Bankr. D. Vt. 2007), and ruled that where debtors properly computed the plan payment under the means test the Court would not deny confirmation based on the good faith requirement. *See also In re Farrar-Johnson*, 353 B.R. 224, 232 (Bankr. N.D. Ill. 2006). The Chapter 13 Trustee Drummond did not appeal the Court's decision in *Chavez*.

[7]Memorandum of Decision, Docket No. 31. As in *Chavez* the Court at pages 28-31 quoted *Austin,* 372 B.R. at 680-83 for the proposition that if a secured claim expense is properly include on Form 22C then issues of reasonably necessary expense and bad faith would not arise. The debtors in O'Connor failed to disclose a boat payment, but this Court determined that the failure to include the boat expense on Form 22C did not by itself establish lack of good faith. Drummond did not appeal the decision in *O'Connor*.

preparing Form 22C and by deviating from the IRS standards, which is not alleged in the instant case. Debtors distinguish *Opper* because almost all the plan payments in this case go to unsecured creditors, and because 11 U.S.C. § 702(b)(2)(A)(iii) plainly allows monthly payments to secured debts without differentiating between luxury or recreational collateral or non-luxury or non-recreational collateral. Debtors distinguish *Smith* on the facts, since there the collateral had been surrendered, and because the Ninth Circuit's decision in *Kagenveama* is controlling rather than dicta.

## DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re McSparran*, 410 B.R. 664, 668 (Bankr. D. Mont. 2009); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Therefore, the Debtor has the burden of proof on all elements of confirmation. *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

The Trustee bases his objection to confirmation on the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

\* \* \* \*

5

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

*McSparran*, 410 B.R. at 668; *Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241.  The Ninth Circuit explained:  "If a trustee or holder of an allowed unsecured claim objects to the confirmation of a plan that does not propose to pay unsecured claims in full, the court may confirm the plan only if the plan provides that all of the debtor's 'projected disposable income' received during the 'applicable commitment period' is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1)."  *Kagenveama*, 541 F.3d at 872.

The Trustee cites the BAP's decision in *Smith*[8], 418 B.R. at 368-69, for the proposition that the panel reads §§ 1325(b)(2) and (b)(3) in sequence, first looking at whether an expense is reasonably necessary for support and maintenance, and then looking at whether § 1325(b)(3) requires the court to determine the amount in accordance with § 1325(b)(3).  This Court notes that *Smith* is factually distinguishable from the instant case.  In *Smith* the debtors sought to continue deducting secured debt payments *not* being paid because the collateral had been surrendered.  In the instant case the Debtors have not surrendered the trailer, and are still making the monthly payments which they deducted on their Form B22C.  With respect to *Smith*'s two-step analysis under § 1325(b)(2) and (b)(3), with all due respect this Court considers that analysis inconsistent with the plain language of § 1325(b)(3) and with binding Ninth Circuit precedent in *Kagenveama,* which the BAP recognized must be followed.  *Smith,* 418 B.R. at 366.

---

[8] In a separate opinion issued the same day, *In re Martinez*, 418 B.R. 347 (9th Cir. BAP 2009), the same panel concluded that debtors were not entitled to deduct amounts for liens that were later "stripped off."

"Disposable income," as defined at § 1325(b)(2), was significantly changed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"). *Kagenveama*, 541 F.3d at 873 n.2. Section 1325(b)(2) now provides, in pertinent part:

> For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
> (A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*McSparran*, 410 B.R. at 668; *Tuss*, 360 B.R. at 691; *Tranmer*, 355 B.R. at 241-42.

Section 1325(b)(3) states plainly: "Amounts reasonably necessary to be expended under paragraph (2) *shall* be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income [above median] ...." (Emphasis added). Where statutory language is plain "the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms. *Lamie v. United States*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)." *Kagenveama*, 541 F.3d at 872. The Trustee asks this Court to substitute *Smith*'s two-part analysis, first to consider under §

7

1325(b)(2) whether expenses are reasonably necessary for the maintenance and support of debtors and their dependants on a real time basis, and only then looking backwards under § 1325(b)(3) to determine "amounts reasonably necessary."  But the phrase "amounts reasonably necessary" is exactly the same in § 1325(b)(2) and (b)(3), and the plain language of § 1325(b)(3) states that "[a]mounts reasonably necessary" under (a)(2) "shall be determined" in accordance with the means test of § 707(b)(2).  In this Court's view § 1325(a)(3) must control, as it wrote in *McSparran*:

> This Court's decision, *In re Kaufman*, 2008 WL 3878005, *4 (Bankr. D. Mont. 2008) cited *Kagenveama* for the proposition that, for above median income debtors, reasonably necessary expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B).  This Court in addition has adopted the analysis from *In re Austin*, 372 B.R. 668, 680-83 (Bankr. D. Vt 2007), that where a debtor is current on a secured obligation that is provided for in Form 22C, the Court refrains from determining whether the expense is reasonable.

410 B.R. at 671.

This Court applies a mechanical test in which its discretion to determine the reasonableness of a debtor's expenses in calculating disposable income has been curtailed by BAPCPA.  *McSparran*, 410 B.R. at 670; *Tranmer*, 355 B.R. at 243-44, 246; *Tuss*, 360 B.R. at 691-92, 695.

In *Kagenveama* the Ninth Circuit rejected case authority which held that "projected disposable income" is not related to "disposable income" as articulated *In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006), "because the plain language of § 1325(b) links 'disposable income' to 'projected disposable income,' and we are bound by the definition of 'disposable income' provided in § 1325(b)(2)(B)." *Kagenveama,* 541 F.3d at 874 .  The Ninth Circuit wrote that the line of authority set forth *In re Pak*, 378 B.R. 257, 263, 268 (9th Cir. BAP 2007) and *In re*

*Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006),

> is unpersuasive because no text in the Bankruptcy Code creates a presumptively correct definition of "disposable income" subject to modification based on anticipated changes in income or expenses. In fact, the textual changes enacted by BAPCPA compel the opposite conclusion. The revised "disposable income" test uses a formula to determine what expenses are reasonably necessary. *See* 11 U.S.C. § 1325(b)(2)-(3). This approach represents a deliberate departure from the old "disposable income" calculation, which was bound up with the facts and circumstances of the debtor's financial affairs. *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007); *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006) (stating that "[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding") (internal quotations omitted).
>
> \* \* \* \*
>
> We decline to follow the line of cases holding that Form B22C creates a presumptively correct definition of "disposable income."

*Kagenveama*, 541 F.3d at 874-75.

In *McSparran* the Court wrote: "If Debtor is an above median income Debtor then the mechanical or formula test applies and this Court does not examine separately the reasonableness of the expenses, but rather pursuant to § 1325(b)(3) the Debtor's expenses must be determined under the "Means Test" of § 707(b)(2)(A) and (B). *Tranmer,* 355 B.R. at 245-46; *Tuss*, 360 B.R. at 691, 695." *McSparran*, 410 B.R. at 671. The Trustee did not appeal *McSparran* and it continues to be the rule in this district. The Debtors in the instant case are above-median income and the mechanical or formula test applies. *Id.* The Debtors are current on their secured obligation to Wells Fargo and it is provided for in their Form B22C, and therefore the Court does not determine the reasonableness of the expense because it is determined under § 707(b)(2)(A) and (B). *Id.*

The Trustee's final argument for his disposable income objection is that Line 47 of Form

9

22C "is not in keeping with the overall emphasis of BAPCPA." No contention exists that the Debtors failed to utilize the proper Form 22C, and their Form B22C lists the secured debt to Wells Fargo at Line 47c. Payments on account of secured debts are specifically provided for in the means test at § 707(b)(2)(A)(iii), which provides:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of –
>
>    (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>    (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and debtor's dependents, that serve as collateral for secured debts[.]

The Ninth Circuit wrote:

> In calculating the debtor's current monthly income, § 707(b)(2) permits the debtor to deduct "the average monthly payments on account of *secured debts*. § 707(b)(2)(A)(iii) (emphasis added). In the Bankruptcy Code, the term "debt" means "liability on a claim." § 101(12). "Claim" is defined very broadly within the Code to mean "any right to payment," whether fixed, contingent, matured, disputed, secured, and so on. § 101(5). The terms "debt" and "claim" are coextensive, "flip sides to the same coin." *In re Rifkin*, 124 B.R. 626, 628 (Bankr. E.D. N.Y. 1991).

*In re Egebjerg*, 574 F.3d 1045, 1048-49 (9th Cir. 2009) (emphasis in original).

The evidence shows that Debtors' regular monthly payments to Wells Fargo are contractually due to the secured creditor each month, and so is a "secured debt." Subsection 707(b)(2)(A)(iii)(I) does not include language that the monthly payments due to secured creditors be "necessary for the support of the debtor" as is included in the following subsection (iii)(II) for "additional payments," which would be expected if Congress intended such a requirement in § 707(b)(2)(A)(iii)(I).

Section § 707(b)(2)(A)(I) specifically refers to clause (iii) as part of the means test. The Trustee's objection to Line 47 is overruled based on the plain language of § 707(b)(2)(A)(iii)[9].

The Ninth Circuit wrote in *Kagenveama*:

> [T]he disposition required by the plain text of § 1325(b) is not absurd. Section 1325(b)'s new approach to calculating "disposable income" for above-median debtors produces a less favorable result for unsecured creditors when "disposable income" is plugged into the "projected disposable income" calculation. We "will not override the definition and process for calculating disposable income under § 1325(b)(2)-(3)[10] as being absurd simply because it leads to results that are not aligned with the old law." [*In re Alexander*, 344 B.R. 742, 747 (Bankr. E.D. N.C. 2006)]. Furthermore, we will not decouple "disposable income" from the "projected disposable income" calculation simply to arrive at a more favorable result for unsecured creditors, especially when the plain text and precedent dictate the linkage of the two terms. *See* [*In re Anderson*, 21 F.3d 355, 358 (9th Cir. 1994)] . . . . If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute. *See Lamie*, 540 U.S. at 542, 124 S.Ct. 1023.

This Court concludes that the Trustee's disposable income objection is without merit based on the plain language of § 1325(b)(3) and § 707(b)(2)(A)(iii)(I), and is contrary to binding Ninth Circuit precedent in *Kagenveama* and this Court's decisions in *McSparran*, *Tuss*, and *Tranmer*.

The Trustee withdrew his good faith objection, but the Debtors still have the burden of proof under § 1325(a)(3) to show that the plan has been proposed in good faith. *Hill*, 268 B.R. at 552. The Court reviews the totality of the circumstances to determine whether a plan has been proposed in good faith. *In re Leavitt*, 171 F.3d 1219, 1224-25 (9th Cir. 1999).

---

[9]Footnote 1 of *Kagenveama* states: "Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a debtor to file a statement of current monthly income on Form B22C." 541 F.3d at 872 n.1. The Ninth Circuit found no inconsistency between Form B22 and BAPCPA.

[10]This suggests that § 1325(b)(2)-(3) should not be separated into a two-step inquiry as the BAP did in *Smith*.

No evidence exists in the record that Debtors misrepresented facts in their plan or unfairly manipulated the Code. No history of filings and dismissals exists, and no evidence exists that the Debtors' intended to defeat state court action. The egregious behavior in *Opper* consisted of debtors proposing $0 to unsecured creditors while making payments to secured creditors to retain luxury items such as a boat and snowmobile, repaying a loan to a 401k plan, and failure to list assets. *Opper*, 20 Mont. B.R. at 132. No similar evidence of egregious behavior exists in the instant case. Debtors' Plan proposes to pay unsecured creditors at least $20,700.00. The Court finds that Debtors have satisfied the good faith requirement of § 1325(a)(3), and all other requirements for confirmation of their Plan.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3. Debtors satisfied their burden of proof under 11 U.S.C. § 1325(b)(1)(B), (b)(2), and (b)(3) to show that their Plan provides that all of the Debtors' projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors under the Plan; and satisfied all other requirements for confirmation under § 1325(a).

**IT IS ORDERED** the Chapter 13 Trustee's objection to confirmation is overruled, and a separate Order shall be entered confirming Debtors' Chapter 13 Plan filed on August 11, 2009.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana
